IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00040-MR

| | |
|---|---|
| WARREN HAYES, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> KILOLO KIJAKAZI,[1] Commissioner ) </br> of Social Security, ) </br> ) </br> Defendant. ) </br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 12].

**I.    BACKGROUND**

The Plaintiff initially applied for a period of disability and disability insurance benefits on March 14, 2011, alleging an onset date of February 28, 2008.[2] [Transcript ("T.") at 254]. The Plaintiff's claim was denied initially and on reconsideration. [T. at 202-03]. Upon the Plaintiff's request, a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is therefore substituted in this action as the named defendant. See Fed. R. Civ. P. 25(d).

[2] The Plaintiff subsequently amended his alleged onset date to March 1, 2011. [T. at 14].

hearing was held on August 8, 2012, before Administrative Law Judge Alice Jordan ("ALJ Jordan"). On September 27, 2012, ALJ Jordan issued a decision denying the Plaintiff benefits. [Id. at 213-25]. Upon the Plaintiff's request for review, the Appeals Council remanded the case to ALJ Jordan for further consideration. [Id. at 230-34].

A second hearing was held on January 21, 2014, before ALJ Jordan. On June 5, 2014, ALJ Jordan issued a decision denying the Plaintiff benefits. [Id. at 9-34]. The Appeals Council denied the Plaintiff's request for review, thereby making ALJ Jordan's decision the final decision of the Commissioner. [Id. at 1-3]. Having exhausted all available administrative remedies, the Plaintiff appealed ALJ Jordan's decision to this Court pursuant to 42 U.S.C. § 405(g).

On appeal to this Court, the Plaintiff presented two assignments of error by ALJ Jordan. Hayes v. Berryhill, 1:15-cv-00283-MR, 2017 WL 906970, at *2 (W.D.N.C. Mar. 7, 2017). First, the Plaintiff asserted that ALJ Jordan "improperly rejected the opinions of the consultative examiner, W. Jim Miller, Ph.D." ("Dr. Miller"). Id. Second, the Plaintiff asserted that ALJ Jordan "failed to properly consider and evaluate the Plaintiff's consistently low Global Assessment of Functioning ("GAF") scores." Id. The Court found that ALJ Jordan erred both in her rejection of Dr. Miller's opinions and in her

evaluation of the Plaintiff's GAF scores. Id. at *4-6. Accordingly, the Court remanded the case for further administrative proceedings consistent with the Court's opinion. Id. at *6.

On April 19, 2018, a third hearing was held, this time before Administrative Law Judge Ann Paschall ("ALJ"). On July 18, 2019, the ALJ issued a decision denying the Plaintiff benefits. [T. at 633-67]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 626-32]. The Plaintiff has exhausted all available administrative remedies, and this case is again ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports

4

his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines a "disability" entitling a claimant to benefits as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). ALJs use a five-step sequential evaluation process to determine whether a claimant is disabled. Arakas v. Comm'r of Soc. Sec. Admin., 983 F.3d 83, 90 (4th Cir. 2020); 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the claimant's application is denied regardless of the medical condition, age, education, or

5

work experience of the claimant. Id. §§ 404.1520(b), 416.920(b). If not, the case progresses to step two, where the claimant must show a severe impairment. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established, and the claimant is not disabled. Id. §§ 404.1520(c), 416.920(c).

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments found at 20 C.F.R. 404, Subpart P, Appendix 1. Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1520(d), 416.920(d), 404.1525, 404.1526. If so, the claimant is automatically deemed disabled regardless of age, education, or work experience. Id. §§ 404.1520(d), 416.920(d). If a claimant's impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"). Id. §§ 404.1520(e), 416.920(e). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.

SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step four, the claimant must show that she cannot perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform her past relevant work, then she is not disabled. Id. §§ 404.1520(f), 416.920(f). Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. Monroe, 826 F.3d at 180.

At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that "exists in significant numbers in the national economy." Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015) (citations omitted) (quoting 20 C.F.R. § 416.920(a)(4)(v)). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION ON REMAND

At step one, the ALJ found that the Plaintiff met the insured status requirements of the Act through March 31, 2011. [T. at 639]. The ALJ also

7

Case 1:20-cv-00040-MR Document 15 Filed 09/30/21 Page 7 of 20

found that the Plaintiff had engaged in substantial gainful activity during the third and fourth quarters of 2016 and the first and second quarters of 2017. [Id.]. But, because there were "substantial time periods" during which the Plaintiff was not engaging in substantial gainful activity, the ALJ completed the entire five-step sequential evaluation. [Id. at 640].

At step two, the ALJ found that the Plaintiff has the following severe impairments: "migraine headaches, emphysema, bipolar disorder, anxiety, panic disorder with agoraphobia, PTSD, and personality disorder." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or equals the Listings. [Id.]. Then, the ALJ determined that the Plaintiff, notwithstanding his impairments, had the RFC:

> [T]o perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) and 4169.67(b) except with the following limitations: He can never climb ladder/rope/scaffolds, and have no exposure to unprotected heights and dangerous moving machinery (hazards). He can have occasional exposure to environmental irritants (fumes), and have no exposure to loud noises such as factory noise or busy customer service environment. He can perform simple routine tasks and instructions. He can have occasional contact with coworkers and the public, consisting of 10% of the workday or less. He can have occasional changes in workplace and/or

> work methods. He can concentrate on, focus, and attend to work tasks for at least 2 hours at a time before needing a normal break of 15 minutes, or once per day, a 30 minute meal break.

[Id. at 644].

At step four, the ALJ found that the Plaintiff had no past relevant work. [Id. at 655]. But the ALJ concluded that, based on the Plaintiff's age, work experience, and RFC, the Plaintiff can perform other jobs existing in significant numbers in the national economy including mail clerk (non-postal), garment folder, and garment bagger. [Id. at 655-56]. The ALJ therefore concluded that the Plaintiff was not "disabled" under the Act from March 1, 2011, the alleged onset date, through July 18, 2018, the date of the decision. [Id. at 656].

## IV. DISCUSSION[3]

The Plaintiff presents the same two assignments of error that he raised in 2017. See Hayes, 2017 WL 906970, at *2. First, the Plaintiff argues that the ALJ improperly rejected Dr. Miller's opinions. Id. Second, the Plaintiff asserts that the ALJ improperly evaluated the Plaintiff's "consistently low" GAF scores. Id. The Court will address each of these arguments in turn.

---

[3] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

## A. Dr. Miller's Opinions

As his first assignment of error, the Plaintiff argues that the ALJ erred in rejecting Dr. Miller's opinions.

In determining whether a claimant is disabled, the ALJ must consider every medical opinion in the record together with the other relevant evidence. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c).[4] "Medical opinions" are statements from physicians, psychologists, and other acceptable medical sources, which reflect judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnoses, and prognoses, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions. Id. §§ 404.1527(a)(1), 416.927(a)(1).

In evaluating and weighing medical opinions, the ALJ must consider: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d

---

[4] "20 C.F.R. § 404.1527 has been replaced by 20 C.F.R. § 404.1520c as the regulation that governs the evaluation of medical opinion evidence in Social Security cases. However, Section 404.1527 still applies to all Social Security claims filed before March 27, 2017, and, thus, remains the applicable regulation in this case." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 384 n.8 (4th Cir. 2021).

650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). A treating source's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In contrast, the opinion of a non-treating medical source, such as a consultative examiner, is not entitled to controlling weight. See generally SSR 96-2P, 1996 WL 374188 (July 2, 1996). Nevertheless, the ALJ may still give "great weight" to the opinion of a non-treating source and, where appropriate, may even find that it is entitled to greater weight than that of a treating source. See id. at *2.

Dr. Miller conducted a consultative mental status evaluation of the Plaintiff on May 4, 2011. During the evaluation, the Plaintiff identified his symptoms as nervousness, extreme weight loss, headaches, recurring nightmares, uncontrollable crying, loss of the desire to eat, and feelings of isolation and loneliness. [T. at 395]. Noting that he had endured a bad childhood which he had "buried until he started to write an autobiography," the Plaintiff explained that—though not suicidal—he had lost his will to live and hated being around people, particularly strangers. [Id. at 394-95]. The Plaintiff also explained that he had discovered, during adulthood, that he had been the victim of sexual abuse as a child. [Id. at 395]. Finally, the Plaintiff

11

reported feeling isolated and alone, sleeping only two hours per night, and rapidly fluctuating between happiness and uncontrollable crying.  [Id.].

When Dr. Miller asked the Plaintiff about post-traumatic stress disorder ("PTSD") symptoms, the Plaintiff reported having lucid dreams, flashbacks, recurring nightmares, nervousness, jitteriness, and an aversion to being around others.  [Id. at 395-96].  The Plaintiff expressed a desire to "crawl into a hole" or "curl[] up in the corner and be left alone" instead of being around other people.  [Id. at 395, 397].  The Plaintiff told Dr. Miller that prescription Zoloft helped the Plaintiff's PTSD symptoms.  [Id. at 395].

Dr. Miller characterized the Plaintiff's attitude and behavior as "quiet and polite," the Plaintiff's speech as "deliberate and slowly paced," and the Plaintiff's thought process as "inward-focused."  [Id. at 396].  Dr. Miller noted that the Plaintiff was able to recall current events in the news, the food he recently ate, and the day of the week.  [Id.]  Dr. Miller, however, also noted that the Plaintiff made an error with serial 7s, which the Plaintiff failed to recognize.  [Id.]  Overall, Dr. Miller concluded that the Plaintiff was "functioning in the bright average to superior range of intelligence."  [Id.]

Assigning a GAF score of 48, Dr. Miller diagnosed the Plaintiff with bipolar disorder, NOS and PTSD, chronic, but ruled out panic disorder with agoraphobia.  [Id. at 397].  Dr. Miller concluded that the Plaintiff's "ability to

12

understand instructions appear[ed] to be fairly good," but also that the Plaintiff's "ability to retain instructions and to sustain attention" and "ability to tolerate the stress and pressure of day-to-day work activity" were poor. [Id. at 397-98]. Finally, Dr. Miller noted that the Plaintiff's ability to relate to coworkers and supervisors was unknown, and that the Plaintiff's "mental health records should be sought and reviewed." [Id. at 398].

In her decision, the ALJ gave Dr. Miller's opinions "significant weight." [Id. at 653]. The ALJ further noted that "Dr. Miller's mental exam findings generally support his conclusions." [Id.]. But, ultimately, the ALJ found that the "evidence weighs against finding [the Plaintiff] as limited as assessed by Dr. Miller." [Id. at 654]. As support for rejecting Dr. Miller's opinions, the ALJ claimed: (1) that the RFC is sufficient to address any of the limitations identified by Dr. Miller; (2) that Dr. Miller's "opinion is not fully supported by the medical evidence of record"; and (3) that "Dr. Miller's opinion is not fully consistent with the record as a whole." [Id. at 653-54].

Here, because the ALJ fails to identify or otherwise explain how the RFC accounts for the limitations identified by Dr. Miller, the ALJ fails to build an "accurate and logical bridge from the evidence to [her] conclusion." Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks omitted) (quoting Monroe, 826 F.3d at 189). For

13

example, the ALJ fails to explain how restricting the Plaintiff to "routine tasks and instructions" with only "occasional changes in the workplace and/or work methods" [T. at 653] would account for Dr. Miller's conclusion—which the ALJ gave "significant weight"—that the Plaintiff's "ability to retain instructions and to sustain attention were poor." [Id. at 398].

The ALJ's two reasons for rejecting Dr. Miller's opinion are similarly inadequate. First, the ALJ found that Dr. Miller's opinions were "not fully supported by the medical evidence of record." [T. at 653]. As support for this conclusion, the ALJ provides the following:

> Mental health exams from April 2011 to January 2016 and from April 2017 to April 2018 mainly showed mild limitations regarding mood, affect, judgment, and insight (5F/3, 19, 6F/5, 10F/8, 20, 12F/9, 16F/41, 22F/13-14, 24F, 28F/9-10). Recent exams showed only these mild limitations (September 2017 mental exam was normal, except he was fidgety (22F/13-14, 24F). April 2018 mental exam was normal, except for labile affect, depressed mood, and fluent/tight speech (28F/9-10)). Additionally, many mental exams outside of his mental health treatment were normal, for example in: May, June, July, September, October, 2012, July 2013, November 2017, February, March, and April 2018 (7F, 8F, 9F, 11F, 27F).

[Id. at 653-54]. But the ALJ fails to explain how this evidence specifically undermines Dr. Miller's opinions. Because the ALJ fails to build an analytical bridge between the evidence and her rejection of Dr. Miller's opinions, the

14

record is insufficient for the Court to conduct meaningful substantial evidence review. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017).

Second, the ALJ found that "Dr. Miller's opinion is not fully consistent with the record as a whole." [T. at 654]. To support this conclusion, the ALJ provides the following:

> Of note, Dr. Miller did not have any treatment records to evaluate in forming his opinion, and Dr. Miller even stated that the [Plaintiff's] mental health records "should be sought and reviewed." Here, with the benefit of the longitudinal record containing long term treatment records from Appalachian Community Services (5F, 6F, 7F, 10F, 12F, 16F, 18F, 22F, 24F, 26F, 28F), these records show that the [Plaintiff] had some significant gaps in treatment and taking medications, as well as some medication noncompliance, including increasing medication dosage without provider approval (5F-7F, 10F, 12F). The [Plaintiff] has received mental health treatment from approximately April 2011 to January 2016, and April 2017 to at least April 2018. However, April 2017 mental health notes show the [Plaintiff] had no treatment or medication since February 2016 (a gap of approximately 14 months) (22F/5) and that he agreed to an inpatient assessment (18F), but did not seek treatment and went home instead (22F/11, 24F/3). In conclusion, this evidence weighs against finding [the Plaintiff] as limited as assessed by Dr. Miller.

[Id.]. The ALJ, however, does not explain why Dr. Miller's alleged failure to review the Plaintiff's mental health records undercuts his evaluation of the

Plaintiff or why the Plaintiff's gaps in treatment and medication noncompliance are relevant in weighing Dr. Miller's opinions. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (finding error where the ALJ did not explain how the record cites were relevant). As a result, the record is insufficient for the Court to conduct meaningful review. See Patterson, 846 F.3d at 663.

For these reasons, the Court concludes that the ALJ erred in discounting Dr. Miller's opinions and remand is required.

**B.  GAF Scores**

As his second assignment of error, the Plaintiff argues that the ALJ failed to properly consider and evaluate the Plaintiff's GAF scores.

"A GAF score represents a clinician's judgment of an individual's overall level of functioning." Kennedy v. Colvin, No. 3:14-CV-665-RJC, 2016 WL 890602, at *3 (W.D.N.C. Mar. 8, 2016) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter "DSM-IV-TR"]). "The GAF scale ranges from 0 to 100 based on psychological, social and occupational functioning on a hypothetical continuum of mental health illness." Powell v. Astrue, 927 F. Supp. 2d 267,

273 n.4 (W.D.N.C. 2013) (citing DSM-IV-TR at 34).[5] While "never dispositive of impairment severity," a GAF score is medical opinion evidence that an ALJ must consider in the context of other evidence of a claimant's level of functioning. Sizemore v. Berryhill, 878 F.3d 72, 82 (4th Cir. 2017) (quoting Emrich v. Colvin, 90 F. Supp. 3d 480, 492 (M.D.N.C. 2015)).

Here, the Plaintiff's GAF scores were consistently between 42 and 48 from April 2011 through November 2013. Hayes, 2017 WL 906970, at *5. "A GAF of 41-50 indicates that an individual has some serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to maintain employment)." Id. (citing DSM-IV-TR at 34). The Plaintiff's consistently low GAF scores, while not dispositive of disability, constitute medical opinions supporting Dr. Miller's assessment of the Plaintiff's degree of impairment and cutting against the ALJ's conclusion that the Plaintiff is not disabled. As with all medical opinion evidence, the ALJ was required to consider the Plaintiff's GAF scores and build an analytical

---

[5] Although the fifth edition of the Diagnostic & Statistical Manual of Mental Disorders discontinued the use of GAF scoring, the Social Security Administration has taken the position that it will continue to view a GAF rating from an acceptable medical source as a medical opinion. See Kennedy, 2016 WL 890602, at *4 (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013); SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective July 22, 2013)).

bridge from the evidence to her conclusion. See Brown, 873 F.3d at 269. The ALJ, however, fails to meaningfully evaluate the Plaintiff's GAF scores.

The ALJ begins by providing boilerplate statements about GAF evidence, but fails to provide concrete examples of how those statements apply in the Plaintiff's case. Mascio, 780 F.3d at 639 (citing Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)); [See T. at 654]. The ALJ's only specific reason for rejecting the Plaintiff's GAF scores is that "[a]ll of the GAF scores, other than the May 2011 GAF score by Dr. Miller, do not come from acceptable medical sources, and instead come from various social workers and counselors." [Id. at 654]. The ALJ's statement is factually incorrect. In addition to the May 2011 GAF score assigned by Dr. Miller, three of the Plaintiff's other GAF scores were assigned by nurse practitioner ("NP") Allison McLean, PMHNP-C.[6] [Id. at 434, 552, and 621]. Because NP McLean is an acceptable medical source, the ALJ's rejection of the Plaintiff's GAF scores based on the type of professional assigning those GAF scores is erroneous.

---

[6] NP McLean is first listed as a Certified Nurse Practitioner (NP-C). [T. at 432]. NP McLean is later listed as a Board Certified Psychiatric Mental Health Nurse Practitioner (PMHNP-BC). [Id. at 550, 622]. The Court infers that NP McLean gained additional certification during the time she was treating the Plaintiff. But, for ease of reference, the Court refers to her generally as NP McLean.

The ALJ ends with the conclusory assertion that "[b]ecause these GAF scores are a snapshot in time, and for the other reasons articulated above, the GAF scores are given probative weight, to the extent they show some limitations, as addressed in the above RFC."[7] [Id.]. But the ALJ "gets things backwards" because she weighs the GAF scores against the Plaintiff's RFC instead of against "other evidence in the record." Mascio, 780 F.3d at 639 (internal quotation marks omitted) (quoting Bjornson, 671 F.3d at 645). And, while one GAF score may be merely "a snapshot in time," the Plaintiff's eight separate, consistently low GAF scores over a two-and-a-half-year period demonstrate a pattern of limited functioning. [Id.].

Because the ALJ "fails to adequately consider the GAF scores in the context of the record," the Court "cannot follow [the ALJ's] reasoning." Nelson v. Saul, No. 4:18-CV-163-D, 2019 WL 4748028, at *8 (E.D.N.C. Aug. 29, 2019). Therefore, the record is insufficient for the Court to conduct meaningful review, and remand is required. See Patterson, 846 F.3d at 663.

---

[7] The Court finds the ALJ's assignment of "probative weight" to be particularly puzzling because GAF scores between 41 and 50 generally indicate "severe symptoms and an inability to work." Hayes, 2017 WL 906970, at *5 n.5 (citing Gordon v. Colvin, No. 1:15-cv-3736, 2016 WL 4578342, at *19 (D.S.C. Aug. 3, 2016)). The ALJ assigned probative weight to the Plaintiff's consistently low GAF scores, but ultimately determined that the Plaintiff was not disabled. Without an adequate explanation, it is unclear of what these GAF scores are supposedly probative.

# ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED**, and the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED**.  Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed: September 30, 2021

Martin Reidinger
Chief United States District Judge